CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY
v. JONES.

Opinion delivered November 19, 1928.

*Thos. S. Buzbee, Geo. B. Pugh* and *H. T. Harrison,* for appellant.

*Elmo CarlLee,* for appellee.

KIRBY, J. This appeal is prosecuted from a judgment for damages caused by the alleged negligent killing of appellee's intestate by striking her with one of its engines, in the operation of its train.

The complaint alleged that on the 17th day of June, 1924, Beulah Campbell was run over and killed by defendant's passenger train going south, at about 2:45 in the afternoon, while she was walking on the railroad track, at a point about one-eighth of a mile south from Tupelo Station; that her death was the result of the negligence of the defendant's servants engaged in the operation of the train, in failing to keep a proper lookout and give warning of the approach of the train, and in failing to stop the train after discovering the presence of plaintiff's intestate upon the track; that, on account of the defendant's negligence causing the injury, his intestate suffered great pain of body and anguish of mind, for which he was entitled to recover damages for the benefit of her estate.

The answer denied all the material allegations of the complaint as to negligence and damage resulting, and pleaded the contributory negligence of decedent.

The jury returned a verdict in favor of the administrator in the sum of $2,000.

It appears from the testimony that Mrs. Beulah Campbell was killed by defendant's passenger train while she was walking north along the railroad track in the direction of Tupelo. Shortly after the train left the station, the engineer saw her on the track approximately a half mile away, and, as the train proceeded, the whistle was blown, and the engineer said she stepped off the track into the clear, and remained standing there until the train reached a point about 90 feet from where she was standing, when she stepped back upon the track. The engineer immediately reversed the engine, applied the brakes, and did everything possible to stop the train. He said she walked on toward the engine, and, when it was 15 or 20 feet from her, looked up, saw it, and turned and started the other way. The engine struck her, knocked her down, and passed over her nearly one-half its length. The train was stopped about one-half an engine's length from where she was struck. She was lying under the fire-box of the engine. The fireman

jumped off, signaled the engineer, and he backed the train a few feet, got out of the cab, and went to where she was lying on the track, and said she was dead at that time. He stated that she was killed instantly.

Two of the four boys riding in an auto along the road, which was parallel to the right-of-way and about 40 to 60 feet from it, and who were going in the same direction as the train, saw the accident. One said the car was opposite the engine, and the other that the engine was about 60 yards ahead of them. They both stated they saw the woman when they reached a point near the Cotton Belt skidway, one of them estimating the distance from her to the engine at about 60 yards and the other at about 200 yards. Both stated that she did not step off the track after they saw her, nor did she turn around and start back the other way before the engine struck her; that it struck her below the knees, pushed her over backwards, and rolled her up under the engine. They went immediately to the place, and the engine had backed off the body, and she was dead when they arrived. The body had a cut across the front reaching to the cavity, and the engineer said it was burst open. No witness testified that there was any motion or indication of life when they saw the deceased after she was struck by the engine. She was a large woman, about 62 years old, weighed about 200 pounds, and, when she left home, had an old-fashioned sun-bonnet on, with long headpiece and long tails. Her vision was poor, and she was also hard of hearing.

Appellant insists that the court erred in not directing a verdict in its favor, and that the testimony is insufficient to support the judgment for damages. The testimony was conflicting. The engineer saw the deceased on the track for a half mile after he left the station, and said that she got off the track and in the clear after he blew the whistle, and stood there, giving no indication that she would return to the track; that, upon her unexpectedly doing so when the engine was about 90 feet from her, he immediately reversed the

engine, put on the emergency brakes, and did everything possible to stop the train, and he succeeded in stopping it within a few feet after it struck the deceased; but the other witnesses saw her approaching, one at 200 yards distance and the other at 60 yards, and said that she did not leave the track afterwards, nor did she turn around and start back down the track immediately before she was struck, contradicting the testimony of the engineer in both these particulars. The jury was warranted in finding that the appellant was negligent either in failing to keep a proper lookout or in the exercise of ordinary care to keep from injuring the deceased after her perilous position was discovered.

The question of the excessiveness of the verdict is a more serious one. No witness testified to any movement of the body or expression from the deceased indicating any conscious physical pain or suffering after she was struck and knocked down and the engine backed off her body, and, although the engineer testified she was killed instantly, he also said he did not see the body until after he stopped the engine and had backed it off the body on signal from the fireman. The train was moving slowly, however, almost stopped, when the engine struck her and rolled the body up, bursting it, and the jury might have found that there was conscious pain and suffering resulting from the injury of more than a short interval, a mere incident to the death. But the time for which she could have endured pain and suffering was very short in any event, not longer than from when she was struck, the very few minutes, until the train stopped and was backed off.

Each case necessarily must be determined to a certain extent upon its own peculiar facts, and we have reached the conclusion that there was no testimony in this case sufficient to warrant a recovery of more than $250 damages. *St. L. I. M. & S. Ry. Co.* v. *Dawson,* 68 Ark. 1, 56 S. W. 46; *Hughey* v. *Lennox,* 142 Ark. 593, 219 S. W. 323.

If the appellee will enter a remittitur reducing the judgment to the sum of $250, with interest from the date of its rendition, it will be affirmed; otherwise it will be reversed, and the cause remanded for a new trial. It is so ordered.